## Rhode Island Insurance Co. v. Wurtman.

(Decided Nov. 4, 1936.)

836

WHEELER, WHEELER & SHELBOURNE for appellant.

BEN S. ADAMS and ALBERT M. KARNES for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On March 9, 1931, the Rhode Island Insurance Company of Providence, R. I., issued to W. A. Stokes a policy insuring his dwelling and barn for a period of three years, in the sum of $1,000, and $100, respectively. W. A. Stokes conveyed the property to Johnnie Stokes and B. C. Stokes, and the insurance company, by an indorsement on the policy, transferred the insurance to the purchasers. On March 14, 1932, Johnnie Stokes and B. C. Stokes conveyed the property to the appellee, Louis Wurtman, for a valuable consideration and the further consideration of $484, evidenced by a note executed by appellee due twelve months after date and payable to the Paducah Lumber & Manufacturing Company. The note was secured by a lien retained in the deed. On March 15, 1932, the appellant, by an indorsement on the policy, transferred the insurance to Louis Wurtman. It was apprised at that time of the existence of the note executed by the appellee to the Paducah Lumber & Manufacturing Company and that it was secured by a lien retained in the deed to appellee. At the request of

the Paducah Lumber & Manufacturing Company the appellant issued to it a standard mortgage clause, which provided that loss or damage, if any, under the policy should be payable to the Paducah Lumber & Manufacturing Company as its interest might appear, and that the insurance as to the interest of mortgagee only therein should not be invalidated by any act or neglect of the mortgagor or owner of the property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than were permitted by the policy. This writing was not attached to the policy, but was delivered to the Paducah Lumber & Manufacturing Company, and appellee was unaware of its existence until after the institution of this suit.

The policy contained this provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

The appellee failed to pay the lien note when it became due, and, on June 19, 1933, the Paducah Lumber & Manufacturing Company instituted a suit in the McCracken circuit court to recover the amount of the note and to enforce the lien. Summons was served on appellee on August 29, 1933. The dwelling house covered by the policy was destroyed by fire September 30, 1933. After the fire, appellant purchased from the Paducah Lumber & Manufacturing Company the note executed to it by appellee. The appellee instituted this action against the insurance company to recover the face amount of the policy, and the insurance company answered, denying liability in any sum and pleading affirmatively the provision in the policy with reference to foreclosure proceedings. It alleged that foreclosure proceedings were instituted by the owner of the lien note with the knowledge of the insured; that there was no agreement waiving the forfeiture provisions of the policy; and that, by reason of this breach of the insurance contract, the policy was void as to the appellee, Louis Wurtman. The insurance company later filed an amended answer in which it alleged that it was the

owner of the note which was secured by a lien, and it asked for a judgment on the note against the plaintiff and for the enforcement of the lien. The case was submitted to the court without the intervention of a jury, and the court adjudged that the insured was entitled to recover $1,000 less $499.50, the consideration paid for the note by appellant, and judgment was rendered against the defendant in the sum of $500.50.

Appellant contends that the institution of the suit by the Paducah Lumber & Manufacturing Company to enforce its vendor's lien was the commencement of foreclosure proceedings within the meaning of the forfeiture provision of the policy, and that, while such action did not impair the security of the holder of the lien under the standard mortgage clause, yet it did avoid the policy as to the insured. In Insurance Company of North America v. Cheathem, 221 Ky. 668, 299 S. W. 545, it was held that the institution of a suit to enforce a mortgage lien is a foreclosure proceeding within the meaning of the provisions of the policy, although strict foreclosures had been abolished in this state by section 375 of our Civil Code of Practice. The clause providing that the institution of the foreclosure proceedings should void the policy was valid. The reason for inserting such clauses in fire insurance policies is the increased risk which human experience shows to arise whenever foreclosure proceedings are started. Insurance Co. of North America v. Cheathem, supra; Hartford Fire Insurance Co. v. Bryan, 244 Ky. 61, 50 S. W. (2d) 74; Springfield Fire & Marine Insurance Co. v. Blevins, 234 Ky. 183, 27 S. W. (2d) 699; Lawson v. Twin City Fire Insurance Co. (D. C.) 2 F. Supp. 171; J. I. Kelly Co. v. St. Paul Fire & Marine Insurance Co., 56 Fla. 456, 47 So. 742, 16 Ann. Cas. 654; Mack v. Liverpool & London & Globe Insurance Co., 329 Ill. 158, 160 N. E. 222, 57 A. L. R. 1039; Hole v. National Fire Insurance Co. of Hartford, Conn., 122 Kan. 328, 252 P. 263, 50 A. L. R. 1113, and note.

The standard or union mortgage clause is to be distinguished from the open mortgage clause. The latter simply provides that the policy shall be payable to the mortgagee as his interest may appear, and his rights will be defeated by a breach of the conditions of the policy by the mortgagor, since he is merely an appointee to receive the proceeds in case of loss. The standard mortgage clause, on the other hand, provides, in sub-

stance, that in case of loss the policy is payable to the mortgagee, and that his interest as payee shall not be invalidated or affected by an act of the mortgagor. The distinction is clearly pointed out in Royal Insurance Company v. Ward, 252 Ky. 687, 68 S. W. (2d) 9.

A correct determination of the question before us, however, depends upon the effect to be given to the words "mortgage or trust deed" found in the forfeiture provision of the policy. If the language of the policy is ambiguous or susceptible of more than one construction, it should be construed strictly against the insurer who prepared it and liberally in favor of the insured. This rule is particularly applicable to clauses providing for forfeitures which are not favored, and such provisions will not be extended beyond the plain meaning of the words used. Hartford Fire Insurance Company v. Bryan, supra; Niagara Insurance Company of New York v. Jeffrey, 215 Ky. 644, 286 S. W. 864; Spring Garden Insurance Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164; Queen Insurance Co. of America v. Cummins, 216 Ky. 329, 287 S. W. 896. The stipulation as to foreclosure proceedings refers only to a mortgage or trust deed. This language cannot be extended to include other kinds of liens without violating the rule of liberal construction in favor of the insured. In Speagle v. Dwelling House Insurance Co., 97 Ky. 646, 31 S. W. 282, 283, 17 Ky. Law Rep. 610, it was held that proceedings to foreclose a mechanic's lien did not violate a stipulation that the policy should be void "if foreclosure proceedings shall be commenced." To the same effect are Colt v. Phœnix Fire Insurance Co., 54 N. Y. 595, and Fire Ass'n v. Patton, 15 N. M. 304, 107 P. 679, 27 L. R. A. (N. S.) 420.

In Collins v. London Assurance Corporation, 165 Pa. 298, 30 A. 924, the insured property was sold under an execution on a judgment entered on a note, which had been executed as additional security on a debt of $800, which was secured by a mortgage. It was held that the sale was not a foreclosure proceeding by virtue of a mortgage or trust deed, and did not invalidate the policy under a clause which provided that it should be void if, with the knowledge of the insured, foreclosure proceedings should be commenced by virtue of any mortgage or trust deed. In Southern Insurance Co. v. Estes, 106 Tenn. 472, 62 S. W. 149, 52 L. R. A. 915, 82 Am. St. Rep.

892, it was held that the institution of proceedings to enforce a vendor's lien would not invalidate a policy under a clause making it void if foreclosure proceedings were commenced, with notice of sale, by virtue of any mortgage or trust deed. In Stebbins v. Westchester Fire Insurance Co., 115 Wash. 623, 197 P. 913, 915, the policy contained a forfeiture provision similar to the one in the present case. Proceedings were brought to foreclose a lien on the insured property, which had been impressed upon it by a judgment, to secure the payment of the balance of the purchase price. In holding that this proceeding did not invalidate the policy, the court said:

"It may be somewhat difficult to give any specific name to the lien which was being foreclosed in the Pugsley suit, but, in any event, it is perfectly plain that it was not a mortgage nor a trust deed. If the Pugsley suit had been an action to foreclose a labor or mechanic's lien, we think it would hardly be contended that such an action would be in violation of this provision of the policy. If it be said that this construction is a strict one, our answer is that the insurance company is responsible for the provisions found in the policy. The words there used are its own, and it has been almost universally held that insurance policies will be strictly construed against the insurer, and liberally construed in favor of the insured."

Likewise, in Millard v. North River Insurance Co., 201 Wis. 69, 228 N. W. 746, 748, it was held that foreclosure of a vendor's lien did not come within such provision. The court said:

"The defendants further contend that they were relieved from liability under the policy because of the following provision: 'This entire policy shall be void unless otherwise provided by agreement in writing, added hereto, if with the knowledge of the insured foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed.'

"At the time of issuance there was attached to the policy a rider stating that it was understood and agreed that the property had been sold under a land

contract to Fred Friede, and that the loss, if any, was payable to F. A. and Minnie B. Millard and Fred Friede, as their respective interests appear. On December 10, 1927, the Millards commenced foreclosure proceedings against Friede, by reason of that land contract and his default thereunder. Defendants contend that by reason of those foreclosure proceedings, the policy became void under the provision last quoted, or, at all events, that the commencement of such proceedings by the Millards also constituted such an increase of hazard as to relieve the defendants from liability under the clause of the policy which was first quoted in this opinion. Inasmuch as the matter of foreclosure proceedings is the subject of an express provision of the policy, the effect to be given to such proceedings is only such as it stated in that express provision. Hence the general provision in relation to an increase of hazard does not admit of relieving the insurer from liability in the event of such an increase because of foreclosure proceedings. Furthermore, inasmuch as the express terminology of that provision, in relation to the policy becoming void in the event of foreclosure proceedings, includes only foreclosure proceedings commenced, or notices given of sales 'by reason of any mortgage or trust deed,' the application thereof does not extent to other foreclosures such as the foreclosure of land contracts or liens. 'A clause for a forfeiture of the policy on foreclosure proceedings under a mortgage or deed of trust will not effect a forfeiture on foreclosure of a mechanics' lien, or judgment lien or a vendor's lien.' 14 R. C. L. sec. 306, p. 1128.''

The distinction made in these cases between mortgages and other liens, particularly vendor's liens, is not refined or specious. It is a matter of common knowledge that property is frequently mortgaged for far more than its actual value, while, as a general rule, a vendor's lien is for less than the market value of the property. Consequently, the additional hazard caused by foreclosure proceedings is usually less, where the lien involved is a vendor's lien and the insured owns a substantial equity in the property. Regardless, however, of the motive actuating the insurer in the preparation

of its insurance contract, it has seen fit to limit the forfeiture provisions to mortgages and trust deeds, and, under the rules of construction universally applied to such contracts, the provisions cannot be extended so as to include liens not expressly mentioned.

After the judgment was rendered, the appellant requested the court to state in writing the conclusions of fact found, separately from the conclusions of law, as required by section 332 of the Civil Code of Practice. The order entered on this motion reads:

> "The defendant having moved the Court to separate his findings of fact and conclusions of law in this action, the Court sustained said motion and now finds the facts to be as set forth in the transcript of evidence heard on the trial of this action, which was made by Marshall Jones, official Court reporter of McCracken Circuit Court; and concludes, as a matter of law, that the plaintiff is entitled to recover on his action."

This was not a compliance with the provisions of the Code (Boone, Foreman & Lackey v. Wahl, 226 Ky. 773, 11 S. W. [2d] 915), but the court's failure to comply strictly with the requirements of the Code was not prejudicial, since there was no dispute concerning the facts. The legal question was clearly presented. In Gugenheim v. City of Marion, 242 Ky. 350, 46 S. W. (2d) 478, 479, complaint was made of a similar finding of facts, but this court said:

> "The appellants were not prejudiced, since no finding of facts possible under the evidence would support the claim of the plaintiffs or entitle them to a judgment. The Civil Code of Practice requires the facts to be found so that this court may have the benefit of the conclusions of the circuit court derived from conflicting evidence. Yet the failure to follow the rule does not require a reversal when no finding possible under any view of the evidence would warrant any different judgment. It would be a vain and useless gesture to require a further finding of facts when no possible view of the case would entitle the plaintiffs to a recovery."

Our conclusion is that the judgment of the circuit court is correct, and it is affirmed.